Katherine E. McCarron (D.C. Bar No. 486335)
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20680
(202) 326-2333

Robin L. Wetherill (CA Bar No. 323912)
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20680
(202) 326-2220

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

INSTANT CHECKMATE, LLC,
a limited liability company,

TRUTHFINDER, LLC,
a limited liability company,

THE CONTROL GROUP MEDIA COMPANY, LLC,
a corporation,

INTELICARE DIRECT, LLC,
a limited liability company, and

PUBREC, LLC,
a limited liability company,

Defendants.

'23CV1674 TWR MSB

Case No.: [Case No.]

**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, OTHER EQUITABLE RELIEF, AND CIVIL PENALTIES**

Plaintiff, the Federal Trade Commission ("FTC") for its Complaint alleges:

1. The FTC brings this action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b); and Section 621(a) of the Fair Credit Reporting Act, 15 U.S.C. § 1681s(a), which together authorize the FTC to seek, and the Court to order, permanent injunctive relief, monetary relief, civil penalties, and other relief for the numerous acts and practices of Defendants in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

## SUMMARY OF CASE

2. Defendants sell consumer background reports through subscriptions on their websites InstantCheckmate.com and TruthFinder.com, which allow users of the websites to run background searches using an individual's name and, optionally, city and state of residence.

3. Through their operation of the Instant Checkmate and TruthFinder services, Defendants have violated the FTC Act and the FCRA by:

a. Deceptively claiming their background reports are the most accurate reports available to the public, without substantiation;

b. Deceptively claiming an individual has criminal or arrest records when the individual does not have criminal or arrest records or only has traffic violations;

c. Deceptively claiming that consumers can "Remove" or "Flag as Inaccurate" information in background reports;

d. Deceptively failing to disclose that third-party reviews were incentivized and that the reviewers had a material connection to TruthFinder; and

e. Failing to comply with the FCRA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d), 1395(a), and

15 U.S.C. § 53(b).

**PLAINTIFF**

6. The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court action by its own attorneys. 15 U.S.C. §§ 41-58, and the FCRA, 15 U.S.C. §§ 1681-1681x. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the FCRA, 15 U.S.C. §§ 1681-1681x, which imposes duties upon consumer reporting agencies.

**DEFENDANTS**

7. Defendant Instant Checkmate, LLC ("Instant Checkmate") is a Delaware limited liability company, registered in California, with its principal office or place of business at 375 Camino de la Reina, Suite 400, San Diego, CA 90218. Instant Checkmate transacts or has transacted business in this District and throughout the United States. In 2014, Instant Checkmate entered into a consent order to settle Plaintiff's allegations that Instant Checkmate failed to comply with requirements of the FCRA while promoting its background screening products for use in employment and tenant screening. *United States v. Instant Checkmate*, Case No. 3:14-cv-0675 (S.D. Cal. Apr. 1, 2014).

8. Defendant TruthFinder, LLC ("TruthFinder") is a Delaware limited liability company, registered in California, with its principal office or place of business at 375 Camino de la Reina, Suite 400, San Diego, CA 90218. TruthFinder transacts or has transacted business in this District and throughout the United States.

9. Defendant Intelicare Direct, LLC ("Intelicare Direct") is a Delaware limited liability company, registered in California, with its principal place of business at 9596 Chesapeake Avenue, Suite A, San Diego, CA 92123, and its manager or member address at 375 Camino de la Reina, Suite 400, San Diego, CA 90218. Intelicare Direct transacts or has transacted business in this District and throughout the United States.

10. Defendant The Control Group Media Company, LLC ("The Control Group") is a Delaware limited liability company, registered in California, with its principal office or place of business at 375 Camino de la Reina, Suite 400, San Diego, CA 90218. The Control Group transacts or has transacted business in this District and throughout the United States.

11. Defendant PubRec, LLC ("PubRec") is a Delaware limited liability company, registered in California, with its principal office or place of business at 375 Camino de la Reina, Suite 400, San Diego, CA 90218. PubRec transacts or has transacted business in this District and throughout the United States.

**COMMON ENTERPRISE**

12. In 2017, TruthFinder, Instant Checkmate, The Control Group, and Intelicare Direct were owned by the same holding company. In 2018, that holding company created PubRec and transferred to it the ownership of TruthFinder, Instant Checkmate, The Control Group, and Intelicare Direct. Since 2018, PubRec has wholly owned TruthFinder, Instant Checkmate, The Control Group, and Intelicare Direct.

13. Each of these companies—PubRec, Instant Checkmate, TruthFinder, The Control Group, and Intelicare Direct (collectively "Defendants")—have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. Neither Instant Checkmate nor TruthFinder have any employees. Rather, The Control Group's employees provide product, engineering, information technology, marketing, legal, human resources, and finance and accounting services, among others, for the benefit of Instant Checkmate, TruthFinder, and Intelicare Direct. Under the supervision of The Control Group, Intelicare Direct's employees provide customer support services to Defendants' customers. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, financial arrangements, business functions, employees, and office locations. Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

**COMMERCE**

14. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESS ACTIVITIES**

15. InstantCheckmate.com and TruthFinder.com feature search boxes allowing a user to submit information pertaining to an individual about whom the user would like to obtain a background report. A user initiates a search by submitting an individual's first and last name or initials, and, optionally, a city and state (collectively, a "User Query").

16. Defendants use proprietary software to create, develop, and assemble background reports by querying or "calling" third-party data providers. The third-party data providers are called and recalled based on the existence of new criteria from other providers. Once all third-party data providers have been exhausted, Defendants' software automatically runs a series of pre-programmed de-duplication, filtering, and sorting processes on the results. The end-result of this process is a unique product—a TruthFinder or Instant Checkmate background report. Instant Checkmate and Truthfinder background reports generally include, among other things, name, date of birth, home and cell phone numbers, address history, relatives, arrest and criminal records, government license information, social media or dating profiles, and email addresses.

17. Though the TruthFinder and Instant Checkmate websites allow users to initiate searches and view and select from initial results for free, users cannot access full background reports without subscribing to TruthFinder or Instant Checkmate.

18. Exact prices have varied between 2017 and the present, but Defendants have generally sold Instant Checkmate recurring subscriptions for approximately $34.00 per month and TruthFinder recurring subscriptions for approximately $27.00 per month. Subscribers can conduct unlimited User Queries. Subscriptions to Instant Checkmate and TruthFinder automatically renew each month unless the subscriber takes affirmative steps

to cancel. From 2017–2020, TruthFinder averaged approximately 523,000 subscribers in any given month, with average net revenue of approximately $120 million per year. Instant Checkmate averaged approximately 368,000 subscribers in any given month, with average net revenue of approximately $75 million per year.

## I. THE FTC ACT

19. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

### Deceptive Claims of Accuracy

20. Defendants have disseminated or have caused to be disseminated advertisements and promotional materials, including online banner and search engine advertisements and statements on the TruthFinder and Instant Checkmate websites, touting the accuracy of TruthFinder and Instant Checkmate background reports. For example, Defendants claim in advertisements that Instant Checkmate and TruthFinder reports contain "the **MOST ACCURATE** information available to the public" (emphasis in original) or "the Most Accurate Data Available to Civilians Online."

21. Defendants' accuracy claims have been displayed to consumers millions of times, and in hundreds of thousands of instances consumers have clicked on these ads and been directed to the TruthFinder or Instant Checkmate websites.

22. Defendants lack a reasonable basis for asserting that the information available through Defendants' background report services is accurate because, among other things:

a. Defendants do not know, and have made no effort to verify, whether the information they receive from their third-party data providers is accurate or current when they include it in background reports that they provide to users;

b. Defendants' third-party data providers explicitly disclaim any warranty of the accuracy of the information and state that they provide data as-is;

c. Defendants have failed to take reasonable measures to test or assess the accuracy of TruthFinder or Instant Checkmate reports; and

d. In numerous instances, when consumers have contacted Defendants to report that Instant Checkmate or TruthFinder reports contained erroneous information, Defendants have not verified, investigated, or corrected reported inaccuracies.

23. Additionally, from at least 2018 to 2020, many TruthFinder subscribers had access to an additional service called Guardian Protection Suite, which allowed those subscribers to "claim" TruthFinder reports about themselves and edit those reports by removing any item except for criminal records and by adding additional information. Defendants did not take any steps to ensure that the reports, as edited by Guardian Protection Suite subscribers, were accurate.

24. Thousands of consumers have complained to Defendants about inaccuracies in Defendants' background reports. In numerous instances, consumers have stated that they located inaccurate information about themselves in Defendants' background reports.

**Deceptive Claims that an Individual has Criminal or Arrest Records**

25. Defendants have promoted their background reports by implicitly or explicitly representing that searched-for individuals have criminal and/or arrest records that can be discovered by purchasing TruthFinder or Instant Checkmate subscriptions. Defendants have made these claims by multiple means, including on the TruthFinder and Instant Checkmate websites, in automated messages that Defendants periodically cause to appear on consumers' computer or mobile device screens ("push notifications"), in customized marketing emails to prospective customers, and in search-engine advertisements.

26. For example, Defendants have represented that individuals have criminal or arrest records that can be viewed by visiting the TruthFinder or Instant Checkmate website in advertisements that have been displayed in response to Google and Bing searches for proper names. For example, if a consumer searched for the name "John Smith," the consumer might have been shown an advertisement stating: "John Smith May Have Arrests," "Check John Smith's Arrests," or "Find criminal records, phone, address,

& more on John Smith." Clicking on these ads directed consumers to the TruthFinder or Instant Checkmate website.

27. In another example of Defendants' criminal and arrest records claims, after the submission of a User Query, but before the consumer is prompted to purchase a subscription in order to access the requested report, Defendants have made statements on the TruthFinder and Instant Checkmate websites such as:

a. "The arrest records sections of your report WILL SHOW arrest or conviction records associated with the name [John Smith]";

b. "Your report WILL REVEAL important court records and sensitive legal information associated with the name [John Smith]. We'll reveal arrest details from case numbers [XXXXX-XXXXX]"; or

c. "We found [some number of] CRIMINAL RECORDS for people associated with the name [John Smith] in [State]."

28. In numerous instances, Defendants' representations that searched-for individuals have or may have criminal and/or arrest records that can be obtained from TruthFinder or Instant Checkmate have been false, including because the individuals' TruthFinder or Instant Checkmate reports do not contain criminal or arrest records, or contained only non-criminal traffic violations.

29. Only after purchasing a subscription to TruthFinder or Instant Checkmate are consumers able to view the information in background reports.

30. In numerous instances, after seeing Defendants' representation that an individual's background report contains criminal and/or arrest records, consumers have purchased subscriptions to TruthFinder or Instant Checkmate only to discover that the background report in question includes only traffic violations. Consumers have submitted numerous complaints to Defendants about this deceptive practice.

**Deceptive "Remove" and "Flag as Inaccurate" Features**

31. Defendants have displayed buttons labeled "Remove" and "Flag As Inaccurate" within or alongside TruthFinder and Instant Checkmate reports when subscribers view those reports on Defendants' websites.

32. The "Remove" buttons appear next to specific items of information within TruthFinder and Instant Checkmate reports, such as email address or phone number.

33. When a customer clicks the "Remove" button next to an item of information in a background report, the item disappears from the report as displayed to that customer. However, items of information "removed" from background reports remain visible to other customers who search for the same person.

34. Defendants take no action to investigate the accuracy of the information that a consumer has disputed with the "remove" feature, to modify the contents of reports from which subscribers have attempted to "remove" information, to indicate to other customers that any information has been "removed," or otherwise to correct reports from which information has been "removed."

35. The "Flag As Inaccurate" buttons have appeared at the top of customers' web browsers while they are viewing TruthFinder and Instant Checkmate reports. Customers can use the buttons to "flag" individual sections of the reports, including contact information and criminal records.

36. In numerous instances, when customers have interacted with the "Flag As Inaccurate" buttons, Defendants have presented customers with a pop-up that has contained statements such as the following: "We strive for report accuracy to improve our product. If you've found something inaccurate within the contact section of [report subject]'s report, please tell us about it."

37. In numerous instances, the pop-up has also asked the customer to submit additional information, including by posing questions such as: "Why is this data inaccurate?", with possible responses including: "It is out of date;" "It's not the correct person;" and "It's missing information."

38. To submit a response, the user must click on a green button labeled "FLAG AS INACCURATE." If a user clicks this button, a second pop-up is displayed stating that the information "has been flagged for inaccurate data" and, for Instant Checkmate, "Our data team will review this information."

39. Defendants take no action to investigate the accuracy of flagged reports, to modify the contents of the report, to indicate to other customers that the reports have been "flagged," or otherwise to correct the specific reports that have been flagged.

40. Defendants have directed customers to use the "Remove" and/or "Flag As Inaccurate" buttons to remedy inaccuracies in TruthFinder and Instant Checkmate reports, including during customer service communications.

41. In fact, neither the "Remove" nor the "Flag As Inaccurate" buttons remove or correct information from background reports.

42. Millions of customers have interacted with the TruthFinder or Instant Checkmate "Remove" or "Flag as Inaccurate" buttons, and numerous customers have complained to the company that inaccurate information has reappeared in reports about themselves or family members after the customers have clicked the "Remove" buttons, or that reports were not corrected after the customers clicked the "Flag as Inaccurate" buttons.

**Deceptive Failure to Disclose Incentivized Endorsements**

43. Defendants have attempted to increase the number of positive reviews of Instant Checkmate and TruthFinder's background reports on third-party consumer review website HighYa. This would have the effect of reducing the prominence and percentage of negative reviews.

44. HighYa's website recommends that merchants not offer free products in exchange for reviews because "this practice creates a feeling of obligation among reviewers to only leave 5-star feedback," and further advises consumers, "If a company is offering to pay for a review, our experience has shown that this does not benefit consumers in any way, and it also violates our Terms and Conditions. If a company

reaches out and offers to pay you for a review (using money or in exchange for services), please report them using our contact form."

45. Nevertheless, Defendants promised to provide consumers one free premium report credit in exchange for posting a review of Defendants' products on HighYa.

46. Each premium report credit could be redeemed for a "premium" TruthFinder or Instant Checkmate report. A premium TruthFinder report cost approximately $17.99. A premium Instant Checkmate report cost approximately $19.99.

47. Defendants did not advise customers to disclose, and few, if any disclosed, that they were offered a premium report credit in exchange for posting a review.

## II. THE FAIR CREDIT REPORTING ACT

48. The FCRA, 15 U.S.C. §§ 1681-1681x, imposes obligations on consumer reporting agencies ("CRAs") that assemble and evaluate consumer reports in order to protect the confidentiality, accuracy, relevancy, and proper utilization of such information. These include requirements to maintain reasonable procedures to ensure the maximum possible accuracy of consumer reports, to limit the furnishing of consumer reports to individuals who certify that they will use the reports only for certain permissible purposes, to conduct reasonable reinvestigations when consumers dispute the accuracy of information in their consumer reports, and to provide users of consumer reports with notice of their own obligations under the FCRA.

49. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the FTC to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act. 15 U.S.C. § 1681s(a)(1).

50. Section 621(a)(2) of the FCRA, 15 U.S.C. § 1681s(a)(2), as adjusted by 16 C.F.R. § 1.98(m), authorizes this Court to award monetary civil penalties of not more than $4,705 per violation for each knowing violation of the FCRA which constitutes a pattern or practice of violations of the statute. As specified by the Federal Civil Penalties

Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373, the Court is authorized to award the civil penalty.

51. Defendants' violations of the FCRA have been knowing and have constituted a pattern or practice of violations as required by Section 621 of the FCRA, 15 U.S.C. § 1681s(a)(2).

**Defendants are Consumer Reporting Agencies**

52. Defendants are CRAs because they regularly engage in whole or in part in the practice of assembling or evaluating information on consumers into background reports and, among other things, market, promote, and sell the background reports for employment and tenant screening purposes.

53. Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f), defines a CRA as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

54. FCRA Section 603(d), 15 U.S.C. § 1681a(d), defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under Section 604.

55. Among other things, Section 604 authorizes CRAs to provide consumer reports to persons with "a legitimate business need in connection with a transaction initiated by the consumer," such as for tenant screening. 15 U.S.C. § 1681b(a)(3)(F)(i).

56. Defendants have regularly engaged in the assembly of information on consumers into Instant Checkmate and TruthFinder background reports, which generally include name, date of birth, phone numbers, address history, relatives, arrest and criminal records, government license information, and social media profiles, and have sold those reports to the public.

57. Since at least January 1, 2017, Defendants have used search engine advertising keywords in their marketing and advertising to promote the use of both Instant Checkmate and TruthFinder background reports for use in employment and tenant screening.

58. As part of this advertising campaign, Defendants have purchased thousands of Microsoft Advertising and Google Ads keywords that implicate employee or tenant screening, directing Microsoft and Google to display Instant Checkmate and TruthFinder advertisements when consumers have used the search engines Bing (operated by Microsoft) or Google to search for these or conceptually-related words or phrases.

59. Defendants' search engine advertising keywords have included words and phrases relating to employment, tenant, or credit screening. For example:

a. "nanny background check"

b. "pre employment screening"

c. "criminal background checks for employment"

d. "best background check for landlords"

e. "background check companies for landlords"

f. "tenant background check"

g. "consumer reporting agency background check"

h. "Mary Tenant"

i. "Kevin Job"

j. "Melissa Credit"

k. "free employee background check"

l. "how to check employee background"

m. "texaco employees"

n. "maryland nanny"

o. "trinidad job"

p. "+background +check +employment"

q. "+natalie +landlord"

r. "+employee +background +check +services"

s. "summer nanny"

t. "cesar hire"

u. "florida tenant"

v. "mason hire"

60. In addition, in numerous instances, Defendants selected the "broad" match setting for Microsoft or Google advertising keywords containing terms that relate to employment, tenant, or credit screening under the FCRA. The "broad" match setting instructs Microsoft or Google to display advertisements when consumers search for not only the keyword itself but also synonyms and related terms.

61. Since January 1, 2017, Defendants' inclusion of keywords related to employment, credit, and tenant screening in their ad campaigns have resulted in Instant Checkmate or TruthFinder ads being displayed to consumers more than a million times.

62. Defendants were on notice that their use of these keywords implicated the FCRA because, in 2014, Instant Checkmate entered into a consent agreement to settle allegations that it failed to comply with requirements of the FCRA while promoting its backgrounds screening products for use in employment and tenant screening, including by using search engine advertising keywords that relate to employment and tenant screening. *United States v. Instant Checkmate*, Case No. 3:14-cv-0675, ¶ 9.c. (S.D. Cal. Mar. 24, 2014) (Complaint) (alleging that Instant Checkmate violated the FCRA by promoting the use of its reports for employment or housing through search engine advertising keywords).

63. Additionally, since at least January 1, 2017, Defendants have known that their customers have regularly used Instant Checkmate and TruthFinder background reports for employment and tenant screening.

64. In numerous instances, customers directly communicated to Defendants, including by e-mail and phone calls, that they had used or were using Instant Checkmate and TruthFinder background reports for employment or tenant screening.

65. In numerous instances, when a prospective customer contacted Defendants and indicated an intent to use their background report services for employment or tenant screening, Defendants have failed to take steps to prevent the prospective customer from using Defendants' background report services.

66. In numerous instances, after a user disclosed past or present use of Defendants' reports for employment or tenant screening, Defendants have failed to disable the users' access to the background report services, instead allowing them to continue using the product for the duration of their current subscriptions and to purchase new subscriptions in the future should they choose to do so.

67. Because Defendants regularly engage in the practice of assembling or evaluating information on consumers into background reports and, among other things, market, promote, and sell the background reports for employment and tenant screening purposes, Defendants are CRAs.

68. Despite Defendants' promotion of TruthFinder and Instant Checkmate reports for employment and tenant screening, and their knowledge that their background report services have regularly been used for such purposes, Defendants failed to comply with the requirements of the FCRA as described below.

**Selling Consumer Reports Without a Permissible Purpose**

69. Section 604(a) of the FCRA, 15 U.S.C. § 1681b(a), permits a CRA to furnish a consumer report for purposes authorized in the statute and for no other purpose. These "permissible purposes" include, but are not limited to, using the consumer report in connection with a credit transaction, for employment purposes, or for a legitimate

business need in connection with a transaction initiated by the consumer (e.g., for tenant screening).

70. Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), requires CRAs to maintain reasonable procedures to limit the furnishing of consumer reports only for permissible purposes. The reasonable procedures mandated by Section 607(a) include:

a. Requiring the prospective user of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purposes;

b. Making a reasonable effort to verify the identity of a new prospective user and the uses for the consumer report certified by that prospective user before furnishing a consumer report; and

c. Limiting the furnishing of consumer reports to the purposes listed under Section 604.

71. Defendants do not maintain any procedures to limit the furnishing of consumer reports only for permissible purposes.

72. In numerous instances, Defendants have furnished Instant Checkmate or TruthFinder background reports to individuals when Defendants did not have reason to believe that the individuals intended to use the reports for permissible purposes.

73. Each instance in which Defendants have furnished a consumer report without a permissible purpose, or without maintaining the procedures required by Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), constitutes a separate violation for which Plaintiff may seek monetary penalties.

**Failure to Follow Requirements for Furnishing Consumer Reports for Employment Purposes**

74. Section 604(b) of the FCRA, 15 U.S.C. § 1681b(b), requires CRAs that furnish consumer reports for employment purposes to:

a. obtain a certification that the user has complied with certain consumer notice requirements, including that the user (i) has provided a standalone written disclosure to

the consumer that a consumer report may be obtained, (ii) has obtained the written consent of the consumer to obtain a consumer report, and (iii) will prior to taking any adverse action based in whole or in part on the report, provide the consumer with a copy of the consumer report and a written description of the consumer's rights under the FCRA;

b. obtain a certification that the user will not use the information from the consumer report in violation of any applicable Federal or State equal employment opportunity law or regulation; and

c. provide with the report, or have previously provided, a summary of the consumer's rights under the FCRA.

75. As described in Paragraphs 52-73 above, in numerous instances, Defendants have sold consumer reports for employment purposes.

76. In selling consumer reports for employment purposes, Defendants have not obtained the required certifications or provided a summary of the consumer's rights under the FCRA.

77. Each instance in which Defendants have furnished a consumer report for employment purposes without complying with the requirements of Section 604(b) of the FCRA, 15 U.S.C. § 1681b(b), constitutes a separate violation for which Plaintiff may seek monetary penalties.

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

78. FCRA Section 607(b), 15 U.S.C. § 1681e(b), requires CRAs to follow reasonable procedures to assure the maximum possible accuracy of consumer report information.

79. As described above in Paragraphs 22-24 and 31-42, Defendants do not maintain reasonable procedures for assuring the maximum possible accuracy of information in Instant Checkmate or TruthFinder background reports.

80. Each instance in which Defendants have furnished a consumer report

without following reasonable procedures to assure the maximum possible accuracy of consumer report information as required by Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), constitutes a separate violation for which Plaintiff may seek monetary penalties.

**Failure to Provide User Notice**

81. FCRA Section 607(d), 15 U.S.C. § 1681e(d), requires a CRA to provide a Notice to Users of Consumer Reports ("User Notice") to anyone who receives a consumer report from the CRA. As required by Section 607(d), the Consumer Financial Protection Bureau has prescribed the content of the User Notice through a model notice that is set forth in 12 C.F.R. § 1022, Appendix N. The User Notice provides users of consumer reports with important information regarding their legal obligations under the FCRA, including the obligation of the user to provide a notice to consumers who are the subject of an adverse action based in whole or in part on information contained in the consumer report.

82. Defendants do not provide users of Defendants' background report services with the User Notice when they purchase reports.

83. Each instance in which Defendants have furnished a consumer report without providing a User Notice as required by FCRA Section 607(d), 15 U.S.C. § 1681e(d), constitutes a separate violation for which Plaintiff may seek monetary penalties.

**Failure to Conduct Reasonable Investigations of Consumer Disputes**

84. FCRA Section 611(a)(1)(A), 15 U.S.C. § 1681i(a)(1)(A), requires that, if the completeness or accuracy of any item of information contained in a consumer's file at a CRA is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file,

before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

85. As described above in Paragraphs 31-42, Defendants fail to conduct reinvestigations of the completeness or accuracy of information contained within TruthFinder or Instant Checkmate reports upon receipt of a notice of dispute from the consumer.

86. Each instance in which Defendants have failed to conduct a reasonable reinvestigation as required by FCRA Section 611(a)(1)(A), 15 U.S.C. § 1681i(a)(1)(A), constitutes a separate violation for which Plaintiff may seek monetary penalties.

87. Based on the facts and violations of law alleged in this Complaint, Plaintiff has reason to believe that Defendants are violating or are about to violate laws enforced by the FTC because, among other things: Defendants have made the deceptive representations described in Paragraphs 20-47, and have continued to promote their services for employment and tenant screening without complying with the FCRA, as described in Paragraphs 48-86, at least until the commencement of the FTC's investigation.

**COUNT I**

**DECEPTIVE STATEMENTS**

**REGARDING ACCURACY**

88. Paragraphs 1 through 87 are incorporated as if set forth herein.

89. In numerous instances in connection with the advertising, promotion, offering for sale, or sale of background reports, Defendants have represented, directly or indirectly, expressly or by implication, that their background reports are highly accurate or are "the most accurate information available to the public" and "the most accurate information available to civilians."

90. The representations set forth in Paragraph 89 were false or unsubstantiated at the time the representations were made.

91. Therefore, the making of the representations described in Paragraph 89 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT II**

**DECEPTIVE STATEMENTS**

**REGARDING CRIMINAL AND ARREST RECORDS**

92. Paragraphs 1 through 87 are incorporated as if set forth herein.

93. Defendants have represented to Instant Checkmate and TruthFinder users that searched-for individuals may have or have criminal or arrest records that users could view after purchasing an Instant Checkmate or TruthFinder subscription.

94. In truth and in fact, in many instances, the searched-for individuals do not have criminal or arrest records, or they have only traffic violations. Defendants' representations to the contrary have been false or misleading.

95. Therefore, the making of the representations described in Paragraph 93 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III**

**DECEPTIVE REMOVAL AND CORRECTION CLAIMS**

96. Paragraphs 1 through 87 are incorporated as if set forth herein.

97. Defendants have represented directly or indirectly, expressly or by implication, that subscribers can correct inaccurate information contained in Defendants' background reports by clicking on the "remove" or "flag as inaccurate" buttons.

98. In fact, subscribers cannot correct inaccurate information contained in Defendants' background reports by clicking "remove" or "flag as inaccurate," nor do Defendants inform other users that such information has been flagged or otherwise disputed.

99. Therefore, the making of the representations described in Paragraph 97 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IV**

**FALSE CLAIM OF UNBIASED REVIEWS**

100. Paragraphs 1 through 87 are incorporated as if set forth herein.

101. In connection with the advertising, promotion, offering for sale, or sale of background reports, Defendants have represented, directly or indirectly, expressly or by implication, that customer reviews of Instant Checkmate and TruthFinder reflect the opinions or experiences of ordinary unbiased customers.

102. In truth and in fact, these customer reviews do not reflect the opinions or experiences of ordinary unbiased customers, but instead were written by individuals compensated with a free premium report credit.

103. Therefore, the making of the representations, described in Paragraph 101 was false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT V**

**FAILURE TO DISCLOSE MATERIAL CONNECTIONS**

104. Paragraphs 1 through 87 are incorporated as if set forth herein.

105. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of background reports, Defendants have represented, directly or indirectly, expressly or by implication, that customer reviews of Instant Checkmate and TruthFinder posted on the HighYa website reflected their customers' opinions or experiences.

106. In numerous instances in which the Defendants made the representation set forth in Paragraph 105, Defendants failed to disclose, or disclose adequately, that some of those customers received compensation in the form of a free premium report credit to

post those reviews on the HighYa website. This fact would be material to consumers in evaluating the reviews in connection with a purchase or use decision.

107. Defendants' failure to disclose or disclose adequately the material information described in Paragraph 106, in light of the representation set forth in Paragraph 105, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT VI**

**FCRA SECTION 607(a)**

108. Paragraphs 1 through 87 are incorporated as if set forth herein.

109. As described in Paragraphs 69-73, Defendants failed to maintain reasonable procedures to require users to identify themselves, certify the purposes for which the information was sought, and certify that the information would be used for no other purposes; make a reasonable effort to verify the identity of a new prospective user and the uses for the consumer report certified by that prospective user before furnishing a consumer report; and limit the furnishing of consumer reports to the purposes permitted by FCRA Section 604, 15 U.S.C. § 1681b.

110. By and through the acts and practices described in Paragraph 109, Defendants have violated Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a).

111. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 109 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT VII**

**FCRA SECTION 604(a)**

112. Paragraphs 1 through 87 are incorporated as if set forth herein.

113. As described in Paragraphs 69-73, Defendants have furnished consumer reports, in the form of their background reports, to their subscribers without reason to believe those subscribers have permissible purposes to obtain such reports.

114. By and through the acts and practices described in Paragraph 113, Defendants have violated Section 604(a) of the FCRA, 15 U.S.C. § 1681b(a).

115. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 113 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT VIII**

**FCRA SECTION 607(b)**

116. Paragraphs 1 through 87 are incorporated as if set forth herein.

117. As described in Paragraphs 22-42, and 78-80, in multiple instances, Defendants have failed to follow reasonable procedures to assure maximum possible accuracy of consumer report information.

118. By and through the acts and practices described in Paragraph 117, Defendants have violated Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

119. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 117 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IX**

**FCRA SECTION 604(b)**

120. Paragraphs 1 through 87 are incorporated as if set forth herein.

121. In selling consumer reports for employment purposes, Defendants have not obtained the required certifications or provided a summary of the consumer's rights under the FCRA.

122. By and through the acts and practices described in Paragraph 121, Defendants have violated Section 604(b) of the FCRA, 15 U.S.C. § 1681b(b)(1)(A) and (B).

123. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 121 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT X**

**FCRA SECTION 607(d)**

124. Paragraphs 1 through 87 are incorporated as if set forth herein.

125. As described in Paragraphs 81-83, Defendants do not provide users of Defendants' background report services with the User Notice when users purchase reports, as required by FCRA Section 607(d).

126. By and through the acts and practices described in Paragraph 125, Defendants have violated Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d).

127. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 125 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT XI**

**FCRA SECTION 611(a)**

128. Paragraphs 1 through 87 are incorporated as if set forth herein.

129. As described in Paragraphs 31-42 and 84-86, Defendants fail to conduct reinvestigations of the completeness or accuracy of information contained within TruthFinder or Instant Checkmate reports upon receipt of a notice of dispute from the consumer.

130. By and through the acts and practices described in Paragraph 129, Defendants have violated Section 611(a)(1)(A) of the FCRA, 15 U.S.C. § 1681i(a)(1)(A).

131. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 129 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

132. Consumers have suffered, and will continue to suffer, substantial injury as a result of Defendants' violations of the FTC Act and the FCRA. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act and the FCRA by Defendants;

B. Award monetary civil penalties against Defendants for each violation of the FCRA alleged in this Complaint; and

C. Award such other and additional relief as the Court may determine to be just and proper.

Dated: September 11, 2023

Respectfully submitted,

**FOR THE FEDERAL TRADE COMMISSION:**
BENJAMIN WISEMAN
Associate Director
Division of Privacy and Identity Protection

TIFFANY GEORGE
Assistant Director
Division of Privacy and Identity Protection

/s/ Katherine E. McCarron
KATHERINE E. McCARRON (D.C. Bar No. 486335)
ROBIN L. WETHERILL (CA Bar No. 323912)
Attorneys
Division of Privacy and Identity Protection

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
(202) 326-2333 (McCarron)
(202) 326-2220 (Wetherill)